STATE OF CONNECTICUT *v.* THERESA SPENCER
(11509)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and BRENNEMAN, Js.

Argued November 6, 1985—decision released February 4, 1986

SHEA, J. After a jury trial the defendant was convicted of felony murder in violation of General Statutes § 53a-54c. In her appeal from the judgment she claims error: (1) in the denial of her motion for an acquittal which was based on a claim of insufficiency of the evidence; (2) in the admission of statements by an alleged coparticipant that implicated her in the crime; and (3) in charging the jury upon the necessity for involvement of the defendant in the underlying felony of robbery as a prerequisite for the crime of felony murder.[1] We find no error.

I

Although she maintains that the evidence of her participation in the crime was insufficient, the defendant does not dispute that her two companions, Lawrence Nowlin and Christopher Leecan, did, on December 10,

---

[1] During argument of this appeal the defendant withdrew her claim, which had been briefed, that the statements she had made to the police in Florida after her arrest and to the New Haven police after her extradition, but prior to her arraignment or indictment, were obtained in violation of her right to have counsel present at the interrogation under the strictures of *Massiah* v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964). We recently rejected the contention that the right to appointed or retained counsel is triggered by an extradition proceeding, or that an extradition hearing is a "critical stage" of the prosecution requiring the presence of counsel. *State* v. *Falcon,* 196 Conn. 557, 564, 494 A.2d 1190 (1985); see *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). The defendant also withdrew her ancillary arguments contained in the same part of her brief that vaguely suggest involuntariness of her statements and noncompliance with the requirements of *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

1980, cause the death of Raymond Lovell in the course of robbing him in his room at the Holiday Inn on Whalley Avenue in New Haven. The defendant had met Lovell while working in New Haven as a member of a door-to-door sales organization which also employed him. She had left this employment, in which she had been engaged since mid-November, 1980, about one week before the crime in order to return to her home in Philadelphia.

On December 8, 1980, the defendant returned to New Haven for the stated purpose of obtaining her paycheck and retrieving some clothes she had left. She was accompanied by Christopher Leecan and Lawrence Nowlin, two friends from Philadelphia. They used Leecan's car in which, as the defendant was aware, he carried a gun, handcuffs and an iron pipe. They spent the night in New Haven at the home of an acquaintance of the defendant whom she believed to be a drug dealer. On the following night, December 9, 1980, Leecan and Nowlin stayed at a motel in New Haven. The defendant, who had previously been intimate with Lovell, slept with him at the Holiday Inn.

On December 10, 1980, the defendant rejoined Leecan and Nowlin at their motel. The three of them drove to the Holiday Inn looking for Lovell. As Lovell's car, a Cadillac, was not parked outside his room, they drove to a parking lot nearby where they smoked marijuana and drank for some time. They returned then to the Holiday Inn and parked outside the door of Lovell's motel room. After they had waited for some time, Lovell drove up in his car with Mary Clayton, the manager of the sales operation. The defendant called Lovell over to the car and spoke to him about obtaining her paycheck. Lovell told her to call him later that day. The defendant and her companions returned to the nearby

parking lot where they again smoked marijuana and drank. In the evening they drove back to Lovell's motel.

The defendant entered Lovell's room. After a while her two companions knocked on the door of the room and it was opened by the defendant. A friendly conversation ensued in which Lovell and Leecan discussed Florida. Eventually, Leecan got up to use the bathroom. At the sound of the toilet being flushed, the defendant got up from the bed, where she had been sitting near Lovell, and Leecan emerged from the bathroom with a gun in his hand.

According to the defendant, who testified in her own defense, when she saw Leecan point his gun at Lovell she ran from the room in panic, got into a car, but had to remain there because she had no keys. Lawrence Nowlin, the principal witness against her, testified, however, that the defendant participated in handcuffing Lovell when he was lying on the floor, as he had been ordered by Leecan. Nowlin also testified that when Leecan demanded Lovell's drugs and money, Lovell replied that his money was not in the room; that the defendant, as requested, handed Leecan an electrical cord, which he used for tying Lovell's feet; that Leecan gagged Lovell and put a pillow case over his head; that Leecan then struck Lovell on the head with an iron pipe; and that when the defendant pointed out that Lovell's body was still moving, Leecan struck him twice more. Lovell died from the injuries he had received.

According to Nowlin, the defendant and Leecan removed the victim's extensive collection of jewelry and clothes from his room. When the trio departed they also took the victim's car, but abandoned it about a mile from the Holiday Inn. The defendant and her companions drove to Philadelphia, where they sold the victim's jewelry, the defendant receiving a share of the pro-

ceeds. They then drove to North Carolina, where they remained for several weeks.

While staying in North Carolina, the defendant and Leecan stole a car in which they drove to Florida. The defendant was arrested for this theft in Miami. Later it was discovered that there was a warrant for her arrest for the New Haven crimes.

It is clear that, if the jury could reasonably have credited the testimony of Nowlin and rejected that of the defendant, there was ample evidence of her participation in the underlying offense of robbery from which the victim's death resulted. The remaining elements of the crime of felony murder are not disputed. Our review of Nowlin's testimony, which does contain some improbabilities apparently designed to minimize his own culpability for the crime, discloses no basis for this court to overturn the jury's finding that the defendant did participate in the underlying crime of robbery. The defendant's knowing involvement is confirmed by other circumstances that are not disputed, such as the facts that she and her companions waited around for three days for the sole expressed purpose of obtaining her belongings and her paycheck, that she was the means by which Leecan and Nowlin gained entry to Lovell's room, and that she fled the scene with her companions and remained with them for several months after the crime, though she was aware that a robbery had occurred and claimed to have been informed of the killing two days later. It is not the prerogative of this court to evaluate the conflicting testimony of Nowlin and the defendant, but that of the jurors who heard them testify. *State* v. *Martin,* 189 Conn. 1, 9, 454 A.2d 256 (1983). We conclude that there was a sufficient basis in the evidence to support the verdict of guilty and that the trial court properly denied the defendant's motion for a judgment of acquittal.

## II

The defendant claims that certain statements made by Leecan, which were offered through the witness Nowlin, should have been excluded as hearsay. Nowlin testified that three or four weeks after he first met Leecan and the defendant he had a conversation with them in which Leecan said that he and the defendant were involved in robbing drug dealers, because such victims were not likely to report the crimes. Leecan told him that the defendant would assist by becoming friendly with the potential victims, thus learning their location and the quantity of drugs they might have. When asked whether the defendant was present at the time Leecan described their robbery operation and whether she "did . . . agree," Nowlin answered affirmatively. He was unable, however, to say how long before the trip to New Haven this conversation had occurred.

The defendant objected to the admissibility of the conversation on grounds of relevancy and hearsay. The court overruled the objection, admitting the evidence to show motive and a pattern of activity similar to that claimed to have been involved in the murder of Lovell. The court also concluded that the testimony indicated that both Leecan and the defendant had participated in the conversation.

We agree with the trial court that the evidence of the defendant's participation with Leecan in prior robberies was relevant to show that the defendant was a willing participant in a plan to rob Lovell. See *State v. Nardini*, 187 Conn. 513, 518–19, 447 A.2d 396 (1982). In view of her claim to have been an innocent bystander, this evidence was also of sufficient probative value to outweigh its prejudicial effect. Id., 519–520. In regard to the hearsay objection, there is a sufficient basis for the view of the trial court that the

circumstances of the conversation were such that the defendant's failure to deny Leecan's account of her complicity in the prior crimes was an adoptive admission or, based on the testimony that the defendant "did . . . agree," an express admission.[2] *State* v. *Harris,* 182 Conn. 220, 228–29, 438 A.2d 38 (1980).

The state also introduced, without objection, testimony of Nowlin that in driving back from New Haven after the crime the defendant asked Leecan why he had not robbed the drug dealer she had befriended, at whose home they had spent their first night in New Haven, to which question Leecan replied that he had searched the house but could find no drugs, jewelry or money to steal. Nowlin also testified, without any objection, that Leecan had told him that it was necessary to kill Lovell, rather than simply rob him, because Lovell knew that the defendant lived in Philadelphia. In belatedly arguing the inadmissibility of these statements of Leecan, the defendant assumes that her initial hearsay objection to the earlier conversation concerning her participation in other crimes was sufficient to preserve the issue for appellate review. This assumption is clearly unfounded, because the court's ruling admitting the first conversation in no way indicated that objections to the later conversations would be futile. See *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 511, 227 A.2d 83 (1967).

The defendant also claims that the admission of Leecan's statements deprived her of her constitutional right to confront the witnesses against her. *Pointer* v. *Texas,* 380 U.S. 400, 403–404, 85 S. Ct. 1065, 13 L.

---

[2] Accordingly, we need not consider an alternative ground relied upon by the state for the admissibility of this evidence, the exception to the hearsay rule for statements of a coconspirator in furtherance of the conspiracy. Nowlin's inability to relate the conversation to the time of the trip to New Haven or other events indicating the formation of a conspiracy may have rendered this exception inapplicable.

Ed. 2d 923 (1965). To the extent that the admission of these out-of-court statements is claimed to have violated this fundamental constitutional right, the defendant is entitled to appellate review. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant has not demonstrated, however, that "the record adequately supports a claim that [she] has clearly been deprived of a fundamental right and a fair trial." Id. Her failure to object to the evidence made it unnecessary for the state to establish a foundation sufficient to support the admissibility of the statements, as it had done when objection was raised to the earlier conversation. See *State* v. *Rawls,* 198 Conn. 111, 118, 502 A.2d 374 (1985). The state had no occasion to elaborate upon the circumstances in which the conversations took place in order to satisfy the requirements for admissibility of them as statements of a coconspirator or, possibly, as adoptive admissions. Under a well established exception to the hearsay rule, the admission of statements made by a coconspirator in furtherance of the conspiracy is deemed not to violate the confrontation clause, even where the breadth of the exception under state law substantially exceeds that of the evidentiary rule followed in the federal courts. *Dutton* v. *Evans,* 400 U.S. 74, 81–82, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970).

In reviewing the impact of the introduction of Leecan's statements upon the defendant's right of confrontation, we are not necessarily concerned with the precise contours of exceptions to the hearsay rule. We are concerned only with whether Leecan's unavailability for cross-examination deprived the defendant of a fair trial, and we conclude that it did not.

The testimony of Nowlin that the defendant asked Leecan why he had not robbed their drug dealer host in New Haven was significant primarily for the question asked by the defendant, not for Leecan's response.

This question indicated her knowing participation in a continuing robbery scheme closely related to that which resulted in Lovell's murder. That the defendant had asked this question was, of course, an admission, an exception to the hearsay rule, as it was inconsistent with her claim to have had no knowledge of the planned robbery of Lovell. *Falker* v. *Samperi,* 190 Conn. 412, 425, 461 A.2d 681 (1983); *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982). Leecan's answer, that he had found nothing worth stealing, whether true or false, was of no significance upon the issue of the defendant's involvement in robbing Lovell. We need not consider, therefore, whether this statement of Leecan might have been admissible for the truth of the matter contained therein under the exception covering statements made by a coconspirator during the flight phase of the conspiracy.

The additional statement of Leecan, that Lovell was killed because he knew that the defendant lived in Philadelphia, also has only minimal logical bearing on the issue of her participation in the underlying felony of robbery, which was the basis for her conviction of felony murder. We must not overlook, however, the emotional impact this testimony may have had upon the jury. It appears that Leecan's statement of his reason for killing Lovell was made in response to a question of Nowlin: "I asked him, *after he killed the man,* Mr. Lovell, I asked him why did he do that." (Emphasis added.) It is reasonable to infer that Nowlin's testimony indicates that Leecan's statement was made immediately after Lovell's death while the conspiracy to rob him was still being effectuated. The requirement that a statement of a coconspirator be made during the course of the conspiracy was thus satisfied. See *State* v. *Vessichio,* 197 Conn. 644, 654, 500 A.2d 1311 (1985); *Cooke* v. *Weed,* 90 Conn. 544, 547–48, 97 A. 765 (1916); McCormick, Evidence (3d Ed. 1984) § 267; annot.,

4 A.L.R.3d 671 (1965). We also view this statement as related to the furtherance of the conspiracy, since it was an explanation given to Nowlin for the purpose of allaying his doubts about the necessity of the killing at a time when his assistance was needed to help remove Lovell's belongings. See *Wong Sun* v. *United States,* 371 U.S. 471, 490, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State* v. *Tropiano,* 158 Conn. 412, 421-25, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Robinson* v. *Dobbins,* 108 Conn. 58, 60-61, 142 A. 572 (1928). The record before us, therefore, is adequate to support the admissibility of Leecan's statement under the coconspirator exception to the hearsay rule. Thus the admission did not infringe upon the defendant's constitutional right of confrontation. *Dutton* v. *Evans,* supra.

## III

In charging the jury upon the elements necessary for a conviction of felony murder under § 53a-54c, the court declared that the first of the four elements to be proved by the state was "that the accused, Miss Spencer, *and/or* others, committed or were attempting to commit a robbery." (Emphasis added.) This instruction followed a paraphrasing of the statute to the effect that "a person is guilty of murder when, acting alone or with one or more persons, he—and they're talking about she in this particular case—commits robbery . . . . " The defendant points out correctly that the use of the double conjunction "and/or" in describing the requirement for complicity in the underlying crime is improper, since it would literally allow a jury to find a person guilty of felony murder because he *or* others had committed the underlying felony. The defendant took no exception to this charge, however, until it was repeated by the court stenographer at the request of the jury. The court refused to correct the charge at this time. Another note was submitted by the jury, requesting

"a copy of the four elements stated by the stenographer." The court explained that to supply the jury with "the four bare bone elements" would be incomplete, but offered to provide a rereading of any portion of the charge. The defendant again pointed out the confusion inherent in the use of "and/or" in the charge. The court offered to call the jury once more in order to reread the statute, and the defendant agreed with this proposal. The court then repeated the statutory provisions, which are applicable to a person who, "when acting alone or with one or more persons . . . commits or attempts to commit robbery . . . ." The defendant had no further exception.

Although it would undoubtedly have been the better practice for the court to have explicitly corrected its original misstatement of the element of complicity in the robbery required to convict the defendant of felony murder, we are satisfied beyond a reasonable doubt that the jury was not misled. In addition to the final reading of the felony murder statute, as adapted to the facts of the case, the court gave an elaborate instruction on the necessity of finding that the defendant intended to participate in the robbery of Lovell and that she was not merely present inactively at the crime or had not innocently performed certain acts which may have facilitated its commission. Toward the conclusion of the charge, the court summarized the elements necessary for a conviction of the defendant. In restating the complicity element, the court charged correctly as follows: "So, to recapitulate, in order to find Miss Spencer, the accused here, guilty of the charge of murder as set forth in the indictment, you must find the State has proven beyond a reasonable doubt, one, that she *and* others committed or were attempting to commit the crime of robbery . . . . " (Emphasis added.) After reviewing the charge in its entirety, we are convinced that the original misstatement arising from the use of "and/or"

was adequately cured by the remainder of the charge, including the supplementary instructions given at the request of the jury. See *State* v. *Nardini,* supra, 531–33.

There is no error.

In this opinion the other judges concurred.