## STATE OF CONNECTICUT *v.* EDWARD T. LYNCH (7739)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued January 12—decision released May 1, 1990

*Wesley W. Horton,* with whom were *Jeffrey A. Hoberman* and *M. Hatcher Norris,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Harry Weller* and *John Malone,* assistant state's attorneys, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit larceny in the first degree by extortion in violation of General Statutes §§ 53a-49 and 53a-122 (a) (1), and conspiracy to commit larceny by extortion in violation of General Statutes §§ 53a-48 and 53a-122 (a) (1).[1] He and a codefendant, Paul Fox, were tried together. The defendant challenges the admission into evidence of an out-of-court statement made by Fox, and the sufficiency of the evidence for his conviction of both criminal charges.

The facts in this case revolve around a partially abandoned mill property in the town of Enfield. In 1980, the property was purchased by Martin Levitz, a real

---

[1] The defendant was also charged with criminal attempt to commit bribery in violation of General Statutes §§ 53a-49 and 53a-147 but was found not guilty.

estate developer.[2] In 1981, after making several improvements to the property, Levitz offered the property for sale by way of open listing agreements with several real estate agencies. The defendant, the president of a real estate and appraisal company, did not have a listing for the property. Prior to the Levitz purchase, however, he had appraised the property, and, on one occasion, had introduced Levitz to a potential buyer.

In March, 1981, James Wood, a real estate agent who had an open listing agreement with Levitz, was contacted by Mario Mozzillo, a potential buyer who was interested in making an offer on the property. Prior to submitting that offer to Levitz, Wood met with Fox, the director of planning for Enfield, and another Enfield town official to discuss the town's view on rezoning the mill for residential and retail use. As director of planning, Fox acted as liaison with the planning and zoning commission, reviewed applications pending before the commission, prepared reports on those applications, and set the agenda for the commission's meetings. Wood, on behalf of Mozzillo, subsequently submitted an offer to buy the property to Levitz, who rejected the offer. In May, 1981, Wood made another offer on behalf of Mozzillo that also was rejected. Throughout this period, Wood continued to communicate with both Fox and Levitz about the possible sale.

On July 2, 1982, Mozzillo asked Wood to make another offer on the property. On that same day, Fox called Wood, learned of the proposed offer, and asked Wood to attend a meeting at the defendant's office that afternoon. All prior meetings of Wood and Fox concerning the property had taken place in the Enfield town offices, and the defendant had never been

---

[2] The property was actually purchased by two corporations. Levitz was the president and sole officer and director of both corporations.

included. Fox also contacted Levitz and requested his presence at the meeting. Fox stated that the purpose of the meeting was to discuss a potential buyer of the mill property. The meeting was held as planned in the defendant's office. Present were Fox, Wood, Levitz, the defendant and the defendant's son-in-law, who worked for the defendant's company.

At trial, both Levitz and Wood testified that Fox essentially ran the meeting and that most of his comments were directed to Wood. At the meeting, Fox reviewed the negotiations over the possible sale and rezoning of the mill, emphasizing his role in those negotiations. Wood testified that Fox told him that "the only way that you're going to get this transaction through town planning and zoning in Enfield, is to cobroke this commission with Ed Lynch. And Ed Lynch, in turn, will take care of me." Levitz corroborated Wood's testimony as to this statement. Wood testified that the defendant said something after Fox's statement, but he could not remember what it was. Levitz testified that the defendant stated that "there would be nothing that would be expected if the course of the deal didn't go through." No evidence was offered that the defendant made any other statements at the meeting.

The proposed purchase of the property by Mozzillo never materialized. In the fall of 1982, Fox left his position with the town of Enfield and went to work for the defendant's company. Prior to the July meeting, Fox had told Wood that he intended to work for Lynch. In November, 1985, Wood contacted the state's attorney's office about the events of July 2, 1982.

The defendant first claims that the trial court erred in failing to make an independent, preliminary determination as to whether the state had proven a prima facie case of conspiracy prior to admitting into evidence Fox's out-of-court statement against the defendant. He

argues that the court improperly allowed the jury to make the determination. He further asserts that the court, had it made the determination, could not have found sufficient evidence of a conspiracy without the statement, and, therefore, would have excluded the statement from evidence. The state essentially concedes that the court erred in failing to make the preliminary determination, but argues that the defendant's claim is not reviewable because it was not properly preserved at trial. The state also claims that even if we choose to review the defendant's claim, the court's error is harmless because Fox's out-of-court statement could have been admitted on a variety of other grounds.

The defendant did not object to the admission of Fox's statement at trial in the same manner that he now asserts on appeal. Prior to trial, the defendant filed a motion in limine seeking a limiting instruction to the jury that Fox's out-of-court statement should be considered against the defendant only if *the jury* were to find that the state had established the defendant's participation in a conspiracy without the statement. The court indicated that it was inclined to postpone any limiting instruction until it gave the jury charge, but added that the defendant could raise the issue of a limiting instruction at any appropriate time during trial, and that the court would rule on it then. The defendant did not object or request a limiting instruction during the testimony of Levitz and Wood concerning Fox's statement.

At the close of the state's case, the defendant moved for a judgment of acquittal on all counts of the information, arguing that Fox's statement was inadmissible against him because, without it, the state had not proved a prima facie case of conspiracy, and that, without the statement, there was insufficient evidence for a finding of guilty. The court denied the motion, and the defendant rested his case, waiving all rights to

cross-examine Fox or Fox's witnesses or to challenge evidence presented in Fox's defense. Prior to the commencement of Fox's defense, the jury was instructed not to consider any evidence offered by Fox against the defendant. In its charge to the jury at the close of all the evidence, the court instructed in relevant part: "[A]ny evidence of a statement made by one alleged conspirator, other than at the trial, shall not be considered by you as against another alleged conspirator, unless you first determine from other independent evidence, that at the time the statement was made, a conspiracy to commit a crime existed."

Although the defendant made no objection to the charge, he claims that his motion in limine and motion for judgment of acquittal sufficiently preserved his claim that Fox's statement was inadmissible against him. Alternatively, he contends that this court should exercise its discretion and review his claim under the plain error doctrine. Practice Book § 4185.

The trial court misstated the law when it instructed the jury that the jury had the duty to determine whether the state had proven a prima facie case of conspiracy independent of the coconspirator's statement. Before out-of-court statements of a coconspirator can be admitted into evidence, a trial court must make a preliminary determination, by a fair preponderance of the evidence, that there is sufficient independent evidence of a conspiracy still in existence at the time of the declaration, and that the declaration was made in furtherance of the conspiracy in which both coconspirators were participants. *State* v. *Vessichio,* 197 Conn. 644, 654, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); see also *Cooke* v. *Weed,* 90 Conn. 544, 548, 97 A. 765 (1916). The court's submission of this question to the jury amounted to plain error. See *State* v. *Luca,* 19 Conn. App. 668, 672, 563 A.2d 752 (1989).

We must, therefore, review the evidence, excluding Fox's statement, in terms of its sufficiency to sustain a determination by the court, by a fair preponderance of the evidence, of the existence of a conspiracy. See *State* v. *Vessichio,* supra, 655–56. Our review is conducted without regard to the credibility of the witnesses. *State* v. *Robinson,* 213 Conn. 243, 256, 567 A.2d 1173 (1989).

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators." *State* v. *Vessichio,* supra, 656; *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982); *State* v. *Smith,* 15 Conn. App. 122, 125, 543 A.2d 301 (1988). "The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are 'knowingly engaged in a mutual plan to do a forbidden act.' *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 [1970]." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); *State* v. *Smith,* supra. Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio,* supra, 656; *State* v. *Smith,* supra, 126. Mere presence at the scene of the crime, even when coupled with knowledge of the crime, is insufficient to establish guilt of a conspiracy. *State* v. *Stellato,* 10 Conn. App. 447, 454, 523 A.2d 1345 (1987).

The state cites certain evidence as establishing the existence of a conspiracy, including the defendant's association with Fox and the fact that the defendant was present at a meeting called by Fox that took place in the defendant's office. Prior meetings had taken place in the Enfield town offices and the defendant had

not attended. The defendant had no open listing with Levitz and no involvement as a real estate agent with the property at the time of the meeting.

These facts do not amount to criminal activity or to an agreement to engage in criminal activity followed by an overt act in furtherance of the conspiracy. We conclude from our review of the transcripts and the other evidence that the trial court could not have found sufficient evidence, without Fox's statement, to establish the existence of a conspiracy by a fair preponderance of the evidence, and that, therefore, the statement was not admissible under the coconspirator exception to the hearsay rule. See *United States* v. *Alvarez*, 584 F.2d 694, 701 (5th Cir. 1978).

The state argues that Fox's statement was admissible on other grounds. This court is not prevented from sustaining the ruling of a trial court on a basis other than that used. *State* v. *John*, 210 Conn. 652, 679–80, 557 A.2d 93, cert. denied,     U.S.    , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). The defendant properly points out that in order for this court to conclude that it would have been error not to admit the statement on these alternate grounds, we must also conclude that the trial court would have been required to admit it. In other words, we must hold that the failure to admit the statement would have been an abuse of discretion, or that no discretion existed.[3]

---

[3] The state argues that sustaining a trial court ruling on alternate grounds is equivalent to a finding of harmless error and that doing so impermissibly shifts the burden to the state of proving that the error was harmless. Some cases have described the situation where a trial court reaches a correct evidentiary result for a wrong reason as a form of harmless error. See *Franchey* v. *Hannes,* 152 Conn. 372, 380, 207 A.2d 268 (1965). Generally, where a defendant's claim does not involve the violation of a constitutional right, the burden rests on him to prove the harmfulness of the court's error. *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980). In the present case, however, although the effect of finding the statement admissible on alternate grounds renders the initial error harmless, the usual harmless error analysis does not apply. The question here is not whether an error in admitting the statement might have affected the outcome of the case;

The state claims that Fox's statement could have been admitted as a statement against penal interest, as an adoptive admission or as a verbal act.[4] Adoptive admissions, statements against penal interest and statements of a coconspirator have a commonality beyond the fact that they are all admissible as exceptions to the hearsay rule. Connecticut cases often discuss admissibility of statements under any or all of these doctrines within the confines of the same case, regardless of whether the defendant in a particular case has been charged with a conspiracy to commit a crime. See *State* v. *John,* supra; *State* v. *Pelletier,* 209 Conn. 564, 522 A.2d 805 (1989); *State* v. *Spencer,* 198 Conn. 506, 512 n.2, 503 A.2d 1165 (1986); *State* v. *Vessichio,* supra, 660.

In *State* v. *DeFreitas,* 179 Conn. 431, 451–52, 426 A.2d 799 (1980), a rule was adopted to allow the admission into evidence of third party statements against interest in accord with Rule 804 (b) (3) of the Federal Rules of Evidence. That rule defines a third party statement against interest as "a statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true." A statement against penal interest tends to expose the declarant to criminal liability. It is usually offered to exculpate the accused and is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Fed. R. Evid. 804 (b) (3).

*State* v. *Magnano,* 204 Conn. 259, 285, 528 A.2d 760 (1987); but whether the statement was admissible on other grounds. This is an evidentiary issue that can be determined as a matter of law and in which burdens of proof play no part.

[4] Because our consideration of the statement's admissibility as a statement against penal interest and an adoptive admission is dispositive, we do not address the claim that the statement was admissible as a verbal act.

All but one of the Connecticut cases that give effect to the rule involve the attempt by a criminal defendant to introduce a statement inculpating the declarant and exculpating the defendant. See, e.g., *State* v. *Bryant,* 202 Conn. 676, 523 A.2d 451 (1987); *State* v. *DeFreitas,* supra. In those cases, the courts, concerned about the dangers of collusion and fabrication, required the proponent of an exculpatory statement to produce evidence of the trustworthiness of the statement before admitting it into evidence and required the declarant to be unavailable. Fed. R. Evid. 804 (b) (3); *State* v. *Bryant,* supra, 692–94; *State* v. *DeFreitas,* supra, 450–51. The factors to be considered in determining whether the statement is admissible are the time of the declaration, to whom it was made, the existence of corroborating evidence, the extent to which it is against penal interest, and the unavailability of the declarant as a witness. *State* v. *DeFreitas,* supra, 451.

Here, we are faced not with a statement that inculpates the declarant and exculpates the defendant but with a statement of a codefendant that inculpates both the declarant and the defendant. This was also true in the case of *State* v. *Boyd,* 214 Conn. 132, 570 A.2d 1125 (1990). In *Boyd,* our Supreme Court held that a written statement of a codefendant should not have been admitted as a third party statement against penal interest when the statement was made while the declarant was in police custody and inculpated both the defendant and the declarant. The ruling rests on the court's conclusion that a statement made by a declarant while in custody lacks trustworthiness because the declarant may have had a motive to falsify, such as a desire to alleviate his own culpability by implicating the defendant or a desire for revenge against a codefendant. In the cases cited and relied upon in *Boyd,* the declarant was in custody or already charged with a crime involving the defendant when the statement was made. See, e.g., *United States* v. *Alvarez,* supra.

Our analysis indicates that *Boyd* does not create a blanket rule of inadmissibility of all declarations against penal interest when they are inculpatory as to both the declarant and the defendant. Instead, based upon the traditional analysis of trustworthiness, such statements are inadmissible when made after the crime is complete and when made in a custodial environment to a custodian such as a law enforcement officer. The statement in *Boyd* lacked trustworthiness because the declarant was in custody at the time and because there was no corroborating evidence to support it. Furthermore, the statement was made after the crime was complete, rather than in the throes of its commission, further undermining its trustworthiness. We conclude that a dual inculpatory statement against penal interest is admissible if, by a fair preponderance of the evidence, the circumstances under which it was made confirm its trustworthiness. *United States* v. *Katsougrakis,* 715 F.2d 769 (2d Cir. 1983), cert. denied, 464 U.S. 1040, 104 S. Ct. 704, 79 L. Ed. 2d 169 (1984).

The statement at issue here clearly tended to subject Fox to criminal liability to the extent that a reasonable man in his position would not have made the statement unless he believed it to be true. Indeed, the defendant does not dispute that the statement was against penal interest or that Fox was aware of its incriminating nature. Instead, he argues that Fox was not unavailable as a third party declarant.

A requirement for admitting third party declarations against penal interest is the unavailability of the declarant's testimony. *State* v. *Bryant,* supra, 694; *State* v. *Frye,* 182 Conn. 476, 480–81, 438 A.2d 735 (1980). Connecticut has adopted the definition of unavailability set forth in Rule 804 (a) of the Federal Rules of Evidence, the relevant portion of which includes situations where the declarant "is exempted by ruling of the court on ground of privilege from testifying concerning the subject matter of his statement." Fed. R. Evid. 804 (a) (1);

*State* v. *Bryant,* supra, 694. A declarant may be physically present in court but his testimony may be unavailable because of testimonial privilege. *State* v. *DeFreitas,* supra, 441.

In *United States* v. *Lieberman,* 637 F.2d 95 (2d Cir. 1980), the court was faced with determining the availability of a declarant in a situation factually similar to the present case. In *Lieberman,* the defendant and the declarant were codefendants in the same conspiracy trial, and the contested statement inculpated both of them. The court found that the declarant was unavailable to testify under Rule 804 (a) (1) because "[h]e was a defendant, and the government could not call him as a witness." Id., 103.

In the present case, the declarant was also a codefendant. Nonetheless, the defendant argues that the declarant was not unavailable within the meaning of Rule 804 (a) (1). The defendant asserts that Fox was never exempted from testifying by a court ruling, as required by the rule, because he was never called as a witness by the state in its case-in-chief, and, consequently, never asserted his privilege. While this argument is technically correct, it ignores the fact that a criminal defendant's privilege against self-incrimination is much broader than the privilege of one who is simply a witness. "Basically, the right of an accused is the right not only to avoid giving incriminating responses to inquiries put to him but also to be free from the inquiries themselves. Thus the privilege of an accused allows him not only to refuse to respond to questions directed at his alleged participation in the offense but also entitles him not even to be called as a witness at his own trial." C. McCormick, Evidence (3d Ed.) § 130.

The state presented evidence against both the defendant and Fox in its case-in-chief. The defendant rested without introducing any evidence and specifically and explicitly waived any right he might have had to cross-examine Fox. Fox then presented his defense and testified

in his own behalf.[5] Although Fox waived his testimonial privilege by testifying in his own defense, he could not have been called as a witness or compelled to testify by the state or by the defendant. See *State* v. *Robinson,* supra.

A determination of unavailability is normally a question of fact within the trial court's discretion. Here, however, no facts are contested and the unavailability of Fox is a question of law. We conclude that Fox was functionally unavailable, although physically present, and that Fox's statement was reliable and was against his penal interest. The trial court, therefore, had it considered the issue, would have abused its discretion if it failed to admit Fox's statement as a statement against penal interest.

Although we hold that Fox's statement would have been admissible as a statement against penal interest, we also conclude that it would have been admissible as an adoptive admission.[6] The defendant adopted the statement of Fox as his own when he subsequently stated that no commission would be due if the deal did not go through. The defendant's statement implied that if a sale did go through, a commission would be due in accordance with Fox's statement.

The circumstances surrounding the meeting support our conclusion. The meeting took place in a small room with only five people present. The only topic to be discussed was the potential sale of the mill property to Mozzillo. The defendant had no nexus whatsoever with the Mozzillo offer to buy, and, therefore, could not have had any legal expectation of a commission arising from a purchase by Mozzillo. As a business person experi-

[5] Because the trial court ruled that the jury could not consider Fox's evidence against the defendant, the record on appeal does not include a transcript of Fox's testimony.

[6] We consider the issue of whether the statement would have been admissible as an adoptive admission in view of the fact that the Supreme Court has not yet had an opportunity to address the admissibility of a *noncustodial* dual inculpatory statement against penal interest. See *State* v. *Boyd,* 214 Conn. 132, 570 A.2d 1125 (1990).

enced in real estate transactions, the defendant must have known that he was not entitled to a commission for a sale in which he played no role. Also, in light of Fox's prior statement and the fact that everyone present at the meeting was knowledgeable about real estate sales, the defendant's statement could not be interpreted as a simple conversational filler. It is obvious that real estate commissions are not usually due unless a sale is effected, and a statement to that effect would not be made to a sophisticated audience unless it had another meaning.

Statements made within a defendant's hearing that are relevant and material, to which he makes a subsequent comment or statement indicating that he has heard, understood and comprehended the first statement, are admissible as adoptive admissions. *State* v. *John,* supra, 682–84; see also *State* v. *Harris,* 182 Conn. 220, 228, 438 A.2d 38 (1980). Fox's statement was a predicate to the defendant's statement. Fox addressed the eventuality of a possible sale in which Wood would "cobroke [the] commission" with the defendant or the transaction would not go through the "town planning and zoning in Enfield." The defendant addressed the alternative of no sale, thereby indicating that he understood and adopted Fox's statement. *State* v. *John,* supra, 684. The defendant's statement was not made in a vacuum. Given the particular circumstances surrounding Fox's statement and the defendant's comment, it would have been an abuse of discretion to fail to admit Fox's statement as an adoptive admission.

Having concluded that Fox's statement was admissible against the defendant, we must now consider the defendant's claim that the evidence, including the statement, was insufficient to support his convictions of conspiracy to commit larceny by extortion and attempted larceny by extortion. The defendant essentially argues that the jury could not reasonably have found that the defendant had the specific intent required to commit those crimes.

Our role in evaluating the sufficiency of the evidence to support a jury verdict is well settled. "We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found, ' "upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." ' " *State* v. *Hahn,* 207 Conn. 555, 560, 541 A.2d 499 (1988); *State* v. *Washington,* 15 Conn. App. 704, 715, 546 A.2d 911 (1988). We do not sit as a thirteenth juror, and do not ask whether *we* believe the evidence established guilt beyond a reasonable doubt, but rather, whether, after viewing the evidence in the light most favorable to the state, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State* v. *Washington,* supra; *State* v. *Stellato,* supra, 451–52.

"A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in the pursuance of such conspiracy." General Statutes § 53a-48 (a). As we have previously stated, a formal agreement need not be proved; *State* v. *Ortiz,* supra, 645; *State* v. *Holmes,* supra, 149; and the conviction may be based on circumstantial evidence. *State* v. *Vessichio,* supra, 656; *State* v. *Smith,* supra, 126. A conspiracy can be inferred from the conduct of the accused. *State* v. *Brown,* 199 Conn. 14, 22, 505 A.2d 690 (1986). Because conspiracy is a specific intent crime, the state must prove that the accused intended not only to agree but also to commit the offense that is the object of the conspiracy. *State* v. *Beccia,* 199 Conn. 1, 4, 505 A.2d 683 (1986).

Here, the state provided sufficient evidence to support the reasonable inference that the defendant agreed

with Fox to commit the crime of larceny by extortion. The defendant's intent can be inferred from his conduct. See *State* v. *Stellato,* supra, 453. The meeting was scheduled for and was held in the defendant's office, indicating a prior agreement between the defendant and Fox. The defendant attended the meeting and was present when the incriminating statement was made. While we agree with the defendant that mere presence accompanied by silence is generally insufficient to show knowing participation in a conspiracy, here the defendant was not merely present. His statement that nothing would be expected if the deal did not go through supports the inference that he heard, comprehended and assented to Fox's attempt to extort money from the victim. Both statements were overt acts in furtherance of the conspiracy. The jury could have reasonably inferred from the defendant's relationship with Fox, his presence at the meeting in his own office, the statements of both the defendant and Fox, and the defendant's lack of legitimate involvement with the potential sale, that he knowingly participated in the conspiracy.

The same evidence also reasonably supports the jury's guilty verdict on the count of attempt to commit larceny by extortion. "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a). "Essentially, an attempt under § 53a-49 (a) is an act or omission done with the intent to commit some other crime." *State* v. *Green,* 194 Conn. 258, 271–72, 480 A.2d 526 (1984). The act or omission

constituting a substantial step must be more than mere preparation for committing the intended crime. Id. "[It] must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted." Id., 272. It also must be strongly corroborative of the actor's criminal purpose. *State* v. *Washington*, supra, 717.

In order to have found in the present case that the defendant had the specific intent required to commit the crime of larceny by extortion, the jury would have had to find that he intended wrongfully to deprive Wood of his property by inducing him by threat to deliver the property to himself or a third party. General Statutes § 53a-119 (5). The threat in this instance was that by Fox to use or abuse his position as a public servant to affect Wood and Levitz adversely. General Statutes § 53a-119 (5) (H). The jury could reasonably have inferred, from all the evidence presented, that the defendant was in complicity with Fox and that he intended that the criminal act be performed. Fox's statement was a substantial step in the commission of the crime of larceny by extortion. In fact, if events had transpired as planned, both Fox and the defendant would have done all that was necessary, short of actually collecting the extorted money, to assure completion of the crime.

The defendant finally claims that he could not have been convicted of either crime because the subject of the alleged attempted larceny and conspiracy to commit larceny was not property under General Statutes § 53a-118 (a) (1). That section defines property, in relevant part, as "any money, personal property, real property, thing in action, evidence of a debt or contract, or article of value of any kind." The defendant argues that because Wood had not yet earned his commission

by producing a ready, willing and able buyer, the state failed to prove an essential element of the crime of larceny.

This argument cannot succeed because it fails to recognize the distinction between the actual commission of a crime and an attempt or a conspiracy to commit that crime. As previously stated, the elements of an attempt are the intent to commit the crime and the doing of an act that would constitute the crime or a substantial step toward the crime, if attendant circumstances were as the actor believed them to be. General Statutes § 53a-49. Similarly, to be convicted of conspiracy, the actor must intend to commit a crime, agree with another to commit a crime, and one of the parties must commit an overt act in furtherance of the conspiracy. General Statutes § 53a-48. We have found the evidence sufficient to support the convictions of attempt and conspiracy. Because both attempt and conspiracy are inchoate crimes, the fact that Wood had not yet earned his commission is irrelevant. See *State v. Wilson*, 30 Conn. 500, 506 (1862); see also *State v. Anderson*, 211 Conn. 18, 27, 557 A.2d 917 (1989).

The judgment of conviction must be upheld.

There is no error.

In this opinion the other judges concurred.