# STATE OF CONNECTICUT *v.* PAUL W. FOX
## (7736)

CRETELLA, CORRIGAN and DAMIANI, Js.

Argued April 19—decision released July 24, 1990

*Richard R. Brown,* with whom, on the brief, was *Eric R. Gaynor,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John Malone,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals after a jury trial from judgment of conviction of (1) attempt to commit larceny by extortion in violation of General Statutes §§ 53a-49 and 53a-122 (a) (1), (2) conspiracy to commit larceny by extortion in violation of General Statutes §§ 53a-48 and 53a-122 (a) (1), and (3) attempt to commit bribe receiving by solicitation in violation of General Statutes §§ 53a-49 and 53a-148. The defendant claims that the court should not have denied his motion for judgment of acquittal because of the insufficiency of the evidence to support his conviction of any of the charges. He also claims that the imposition of special conditions of probation without a hearing deprived him of due process.

The defendant and Edward T. Lynch were tried together. Lynch was charged, tried and convicted of

the same offenses as the defendant except for bribery by solicitation for which he was not charged. Lynch also appealed to this court, claiming, among other things, that the evidence was not sufficient to convict him. We affirmed his conviction. *State* v. *Lynch,* 21 Conn. App. 386, 574 A.2d 230 (1990). The facts that provide a background for the present appeal are fully expounded in *State* v. *Lynch,* supra, and will not be set forth here except as relevant to the defendant's claims.

## I

The defendant's first claim is that the evidence against him was insufficient. " 'When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the " 'jury could have reasonably concluded, upon the facts established and the inferences drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' . . ." ' " (Citations omitted.) *State* v. *Carpenter,* 214 Conn. 77, 78–79, 570 A.2d 203 (1990).

## A

At trial, the state had the burden to prove beyond a reasonable doubt the elements of criminal attempt to commit larceny by extortion.[1]

---

[1] "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . (H) use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely . . . ." General Statutes § 53a-119 (5).

"A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as

The defendant claims that the evidence was insufficient to prove (1) that his conduct instilled a fear in the intended victim, James O. Wood, that he would abuse his public position to the detriment of Wood, (2) that the brokerage commission the defendant sought to obtain was "property" of Wood, and (3) that the defendant attempted to abuse his position as a public servant.

The state produced ample evidence for the jury to conclude that the defendant attempted to instill in Wood a fear that if he refused to share a brokerage commission with the defendant and Lynch, then the defendant would use his position as Enfield's town planner to the detriment of Wood.

From the evidence presented, the jurors could have reasonably made the following conclusions of fact. The defendant's duties as town planner included serving as a liaison between the town planning and zoning commission and the zoning board of appeals. In this capacity, he would review the applications pending before the commission and prepare reports for the commission's review. A former chairman of the zoning board testified that any board member could call the defendant for advice on zoning matters, that the only way to make a fair decision was through the information the defendant provided, and that the defendant was regarded as knowing the applicable zoning ordinances and regulations better than anyone else.

In 1982, Wood was attempting to broker a sale of an old mill complex in Enfield between the owner, Martin Levitz, and a developer and potential buyer, Mario Mozzillo. Because the mill was in an industrial zone, Wood met with the defendant and the director of planning and development at Enfield's town hall to deter-

he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a).

mine how the town would view rezoning the mill for residential and retail uses. The defendant admitted on cross-examination that zoning changes would have been necessary to convert the mill complex into housing.

On July 2, 1982, Wood told the defendant that Mozzillo had offered $900,000 for the mill. The defendant then asked Wood to attend a meeting at Lynch's office in Suffield that same afternoon. The defendant, Lynch and Lynch's son-in-law were at the office when Wood arrived. Levitz arrived later. The meeting occurred in a small conference room.

The defendant conducted the meeting. He reviewed the status of the negotiations between Levitz and Mozzillo, and then said to Wood, "Jim, the only way that you're going to get this transaction through Town Planning and Zoning in Enfield, is to co-broke this commission with Ed Lynch and Ed Lynch, in turn, will take care of me." Later in the meeting, Lynch said that "there would be nothing that would be expected, if the course of the deal didn't go through."

The defendant argues that the absence of the element of fear was evidenced by the response that Wood made at the meeting. Wood stated that he did not "believe what [he] was hearing." The defendant characterizes this as a statement of fact, i.e., Wood did not believe what the defendant had said. From this, he argues that the jury could not reasonably infer that Wood feared that he would abuse his public position to Wood's detriment. The jury, however, could have reasonably found that Wood's response was simply an expression of astonishment at the defendant's conduct. As to whether he attempted to instill fear in Wood, his remarks at the July 2 meeting speak for themselves.

The defendant claims that there was no evidence to show that the $27,000 commission, which Wood expected to receive if the sale of the mill was consum-

mated, was "property" within the definition of extortion in General Statutes § 53a-119 (5). General Statutes § 53a-118 (a) (1) defines property as "any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind." The defendant argues that because Wood had not yet earned his commission, he did not have property that could be extorted from him. This same argument was considered and rejected in *State* v. *Lynch,* supra. There we stated that the argument "cannot succeed because it fails to recognize the distinction between the actual commission of a crime and an attempt or conspiracy to commit that crime. . . . Because both attempt and conspiracy are inchoate crimes, the fact that Wood had not yet earned his commission is irrelevant." Id., 403.

The defendant claims that there was no evidence that the defendant attempted to abuse his position as a public servant. We reject that claim. There was no evidence that Lynch was involved in the prospective deal between Levitz and Mozzillo. Mozzillo did not even know Lynch. The defendant had no open listing with Levitz and no involvement as a real estate agent with the property at the time of the meeting. In *State* v. *Lynch,* supra, 398, we stated, "[t]he defendant had no nexus whatsoever with the Mozzillo offer to buy, and, therefore, could not have had any legal expectation of a commission arising from a purchase by Mozzillo."

Under these circumstances, the jury could reasonably have concluded that Lynch and the defendant had no right to a commission from the sale and that, at the meeting, the defendant was attempting to use the threat of his influence among the Enfield zoning officials to coerce Wood into agreeing to share a commission. Whether the defendant took substantial steps actually to abuse his position of influence is irrelevant. He attempted to instill in Wood a fear that he would abuse his position if the commission was not shared.

## B

The defendant argues that the state failed to produce evidence sufficient to prove that the defendant had conspired with Lynch to commit larceny by extortion. The defendant and Lynch were tried together. The state presented the same evidence against both men to prove the existence of a conspiracy. In *State* v. *Lynch,* supra, we held that that evidence was sufficient to allow the jury reasonably to infer the existence of a conspiracy. We therefore reject the defendant's claim.

## C

The defendant's final attack on the evidence concerns his conviction for criminal attempt to commit bribe receiving by solicitation. General Statutes § 53a-148 (a) provides that "[a] public servant . . . is guilty of bribe receiving if he solicits, accepts or agrees to accept from another any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote." The defendant states that there is no evidence that he "had the power as Town Planner to recommend the passage or nonpassage of any matter before [the planning and zoning commission]." Taking this statement as true, it would not entitle the defendant to an acquittal. "It is immaterial and no defense that the [public servant] had no authority to take the action desired by the bribe [solicited]. The offense of bribery may be committed although the [public servant] in question does not have the authority to do or refrain from doing the act to which the bribe relates, as long as the [public servant] purported to act in his official capacity." *State* v. *Carr,* 172 Conn. 458, 468, 374 A.2d 1107 (1977). Moreover, contrary to the defendant's contention, there was ample evidence from which the jury could reasonably have concluded that the defendant, in fact, had a great deal of influence on the decisions of the zoning commission.

Two former members of the commission testified that the defendant, as town planner, supplied commission members with zoning information from which they would make their determinations. One of them, Arthur Cote, testified that commission members would often ask the defendant how to interpret zoning ordinances. The other former member, Gerald Legault, stated that one function of the town planner is to advise the commission on "overall planning and planning theory." He testified that the defendant would have discussions with the commission and make recommendations such as, "You can't do that. The zoning law doesn't allow you to do that type of thing." He further stated that he could not recall an instance in which the commission went against the defendant's advice. Legault explained that the commission relied on the defendant for advice because the members were all part-time volunteers who did not have the defendant's education. He said the defendant knew the zoning ordinances better than anyone on the commission.

General Statutes § 53a-146 (3) defines a "[p]ublic servant" as any "officer or employee of government, elected or appointed, and any person participating as adviser, consultant or otherwise, paid or unpaid, in performing a governmental function." A public servant is guilty of bribe receiving by solicitation under General Statutes § 53a-148 if he solicits a benefit as consideration for his decision, opinion, recommendation or vote. This court has construed what constitutes a public servant's "decision" in *State* v. *Rado,* 14 Conn. App. 322, 541 A.2d 124, cert. denied, 208 Conn. 813, 546 A.2d 282, cert. denied, 488 U.S. 927, 109 S. Ct. 311, 102 L. Ed. 2d 330 (1988). There we held that the term "decision" signifies any exercise of discretion by the public servant. Id., 329. There was ample evidence that the defendant solicited a bribe in return for a favorable recommendation to the commission.

## II

At the time of sentencing, the defendant raised no concerns over the conditions of probation imposed by the court requiring that during the period of probation he was to perform 1200 hours of community service and not engage in any real estate brokerage or agency or appraisal work. He now asks on appeal that we review those conditions as a constitutional question pursuant to *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Anderson,* 212 Conn. 31, 36, 561 A.2d 897 (1989). He claims (1) that the conditions are unrelated to his rehabilitation and (2) that the sentencing court lacked authority to suspend his real estate license.

This court addresses the issue of reviewability under the four guidelines of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and in so doing, concludes that no constitutional violation clearly exists and that the defendant was not deprived of a fair trial.

As to the defendant's first claim, General Statutes § 53a-30 permits the sentencing court to order a probationer to "satisfy any . . . conditions reasonably related to his rehabilitation." The court has broad discretion in imposing conditions. *State* v. *Smith,* 207 Conn 152, 167, 540 A.2d 679 (1988). In the present case, the special condition prohibiting the defendant from engaging in private real estate work during the period of probation was reasonably related to his rehabilitation in light of the crimes he had committed and the public service work he was to perform. The defendant presented an alternative sentencing plan according to which he would perform public service in the area of land use planning as a planner for the Northeastern Connecticut Council of Governments. Accordingly, the court's

action in setting forth the aforementioned conditions of probation falls within the inherent authority of the sentencing judge.

As to the second claim, the record reveals that the trial court did not suspend the real estate license of the defendant and that the judge merely placed a limitation on the defendant's employment activities during the probationary period leaving any further restrictions or suspension to the appropriate administrative authorities. Although the trial court specifically noted that the defendant's real estate license was not suspended, the Superior Court clerk entered a judgment stating that the license was suspended during the period of probation.

The judgment is affirmed and the case is remanded with direction to the clerk to delete from the judgment that language referring to the suspension of the defendant's real estate license.

In this opinion the other judges concurred.