STATE OF CONNECTICUT *v.* KIMBERLY P.
SCHIAPPA
(14450)

Dupont, C. J., and Landau and Hennessy, Js.

Argued December 12, 1996—officially released April 15, 1997

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *C. Robert Satti, Jr.*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Kimberly P. Schiappa, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] On appeal, the defendant claims that the trial court improperly (1) admitted a hearsay statement, (2) permitted the jury to make a preliminary finding in connection with the determination of the admissibility of an adoptive admission by silence, (3) found the evidence sufficient to sustain her manslaughter conviction and (4) denied her request to recharge the jury.[2]

The jury reasonably could have found the following facts. On December 11, 1991, the defendant, an employee at Sikorsky Aircraft in Stratford, and a coworker, Stephen Staffy, met after work. They went to a liquor store and then to Staffy's house in Trumbull, where he lived with his roommate Gary Meier. The defendant and Staffy arrived at the house at approximately 5 p.m., when Meier, a bartender at the Hunting-

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] The defendant was also convicted of hindering prosecution in the first degree and was sentenced to a five year term of imprisonment on that count. She has not challenged her conviction with respect to that count.

ton Inn, was leaving for work. The defendant and Staffy remained at the house, consumed alcohol and engaged in sexual intercourse. Sometime thereafter, they left the house and went to a few bars before stopping at the Huntington Inn, where they saw Meier. They left the Huntington Inn around 11 p.m. and drove to Bridgeport to purchase drugs. While in Bridgeport, they were confronted by the defendant's husband, James Schiappa.

Prior to confronting the defendant and Staffy, James Schiappa, who worked at the Country Home Bakery located in Bridgeport, was working the third shift from 11:30 p.m. to 7:30 a.m. James Schiappa requested permission to leave work early, at about 12:50 a.m., because his son James, who was twelve years old, was home alone. Instead of going home, however, James Schiappa went looking for his wife, the defendant.

As James Schiappa approached the defendant and Staffy in his pickup truck, Staffy drove off and unsuccessfully attempted to evade him. James Schiappa followed them into Saint John's cemetery in Stratford and, upon stopping, exited his pickup truck and approached Staffy's car. Staffy reached into the backseat of his car, grabbed a softball bat, exited his car and then proceeded to hit James Schiappa numerous times with the bat. Staffy also kept a knife under the front seat of his car. James Schiappa was stabbed in the neck and the back. The defendant and Staffy left the scene and drove back to Staffy's house.

An employee of the Ella Grasso Center, located adjacent to the cemetery, heard noises coming from the area of the cemetery at approximately 1:10 a.m. The employee called her supervisor, Delores Evans, and told her what she had heard. After hearing more noises from the same area, Evans called the Stratford police at approximately 1:15 a.m. Officer Thomas Clements

was dispatched to the location and, upon entering the cemetery, noticed a pickup truck. Clements exited his patrol car and observed a white male, later identified as James Schiappa, lying in front of the truck. He showed no signs of life.

Meanwhile, Meier returned home from work and, before exiting his car, was approached by Staffy who said, "Turn off the lights, I just killed somebody." As this was said, the defendant was standing behind Staffy. The defendant, Staffy and Meier went into the house and shortly thereafter Staffy, holding a pair of boots and a leather jacket, said to Meier, "This stuff has to go." Staffy put the boots, jacket and a knife in a sheath into a plastic bag and gave the bag to Meier, who took it to Juniper Ridge Road and threw it into a pond. He then returned home.

The next day, a highway supervisor employed by the town of Trumbull noticed that the pond on Juniper Ridge Road was high and saw a garbage bag against the outflow pipe. He pulled the bag ashore and in the process ripped the bag. In the bag were a pair of boots, a leather jacket and a knife in a sheath. Detective Richard Yeomans of the Stratford police department was called to the pond and observed the contents of the bag, including a canceled check belonging to Staffy found in the jacket. The items were tested and the tests revealed a blood type matching that of James Schiappa on the boots and the jacket.

I

The defendant first claims that the trial court improperly admitted a hearsay statement. We agree.

Additional facts are necessary for the resolution of this issue. After Meier tossed the plastic bag containing Staffy's leather jacket, boots and knife into the pond, he returned home and told Staffy to turn himself in to

the police. Meier expressed concern to Staffy that the defendant would be caught and implicate Staffy in the crime. According to Meier, Staffy responded, "She's not going to say nothin'. She beat his ass too."[3]

The defendant argues that Staffy's statement, "She's not going to say nothin'. She beat his ass too," given to allay Meier's concern that the defendant would be caught and inculpate Staffy, was inadmissible hearsay. The defendant argues that the statement does not fall under any recognized hearsay exception, was not made in circumstances assuring reliability and was not corroborated by any other evidence in the case.

The state argued at trial that the statement was admissible as a declaration against penal interest, as a prior inconsistent statement, and as impeachment of Staffy's testimony that he could not remember making this statement to Meier. The trial court found that the statement was reliable and admitted it under the declaration against penal interest exception to the hearsay rule.[4]

---

[3] Meier testified as follows:

"[Prosecutor]. You've indicated in testimony there was a discussion between yourself and Mr. Staffy regarding him turning himself in. I think we got to the point, and I'll ask you the question now, please, what did you say to him, please?

"[Meier]: I said you should turn yourself in because she's going to get caught for this and she's going to tell on you and it would be better if you were first.

"[Prosecutor]: And what did he say in response to that, please?

"[Meier]: He said, she's not going to say nothin'. She beat his ass, too."

[4] The trial court, after hearing argument from both counsel, ruled as follows: "What I'm being told here is that this is a third party statement which is against penal interest and it does appear to be that, certainly, and whether it can be used under circumstances that would be reliable or whether it was made under circumstances that would be reliable. Certainly it would appear that Mr. Staffy would have nothing to gain by making this statement to this individual. If he was in custody, of course, then it would be a different ball game but he's making it to his roommate or his housemate whom he apparently had some faith in because he was asking to dispose of items which were prejudicial [to] him so from the reliability standpoint it would appear to fit that category and it also, as to his availability to testify, certainly Mr. Staffy was here and was subject to examination and cross-

On appeal, we limit our review to whether the trial court properly concluded that the statement satisfied the declaration against penal interest exception to the hearsay rule.

The principal grounds for the exclusion of hearsay statements are the "absence of an oath and the lack of the test of cross-examination. *Shea* v. *Hyde*, 107 Conn. 287, 289, 140 A. 486 [1928]. See also *State* v. *Barlow*, 177 Conn. 391, 396, 418 A.2d 46 [1979]; *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.*, 154 Conn. 593, 597, 227 A.2d 548 [1967]. A third concern has also been expressed: the lack of the personal presence of the out of court declarant, which results in the jury's inability to observe the declarant's demeanor so as to judge credibility. *Douglas* v. *Alabama*, 380 U.S. 415, 418–19, 85 S. Ct. 1074, 13 L. Ed. 2d 934 [1965]." *State* v. *DeFreitas*, 179 Conn. 431, 440, 426 A.2d 799 (1980).

Exceptions to the hearsay rule have arisen when the party offering the hearsay evidence sufficiently establishes the necessity and reliability of that evidence. "The necessity factor is reflected in the prerequisite that the declarant be unavailable. . . . Several exceptions to the hearsay rule require the declarant to be unavailable as a witness at the present trial." (Citation omitted.) Id., 440–41.

A requirement for admitting third party declarations against penal interest is the unavailability of the declar-

examination but I think it goes without saying is that he was very selectively unable to remember a good deal of what occurred either for reasons that he was under the influence of the alcohol or drugs or both or that he just choose not to remember. The court can't really make that determination but he seemed to be kind of selective in his memory. That virtually makes him unavailable to testify certainly on an issue such as this. So, I think under all the circumstances that I think that the statement can be admitted as being reliable and being as against interest and these are against his interest as well as against the interest of the defendant and so it's not just that it's self-serving to exculpate him, he's inculpating himself with the statements. So I believe under all the factors the court can determine it to be admissible. I will allow it."

ant's testimony. *State* v. *Bryant*, 202 Conn. 676, 694, 523 A.2d 451 (1987); *State* v. *Frye*, 182 Conn. 476, 480–81, 438 A.2d 735 (1980). Connecticut has adopted the definition of unavailability set forth in Rule 804 (a) of the Federal Rules of Evidence, the relevant portion of which includes situations where the declarant "testifies to a lack of memory of the subject matter of the declarant's statement." Fed. R. Evid. 804 (a) (3); *State* v. *Lynch*, 21 Conn. App. 386, 396, 574 A.2d 230 (1990). A determination of unavailability is normally a question of fact within the trial court's discretion. *Fontaine* v. *Coyle*, 174 Conn. 204, 209, 384 A.2d 616 (1978); *State* v. *Lynch*, supra, 398.

The trial court found that Staffy was selective in his memory which "virtually . . . [made] him unavailable to testify" on this issue. The record reflects, however, that, at trial, Staffy did not testify to a lack of memory of the subject matter to establish unavailability. Our review of Staffy's testimony reveals that he was able to recall a substantial portion of the evening's events. Staffy testified in part to the following course of events on December 11 and 12, 1991. He remembered leaving work with the defendant, going to a liquor store and then to his house. He remembered seeing Meier, who was leaving for work, and then engaging in sexual intercourse with the defendant. He testified that they left the house and went to a couple of bars. Later, they stopped at the Huntington Inn for a couple of drinks and to see Meier, and then went to Bridgeport to purchase drugs. He remembered seeing James Schiappa, trying to evade him and then confronting him at the cemetery. He testified that he hit James Schiappa with the bat because he felt threatened and, further, that he did not check to see if James Schiappa was alive when he and the defendant left the cemetery because he was nervous and scared. He also remembered returning to his house

with the defendant, seeing Meier and telling him that he had been in a fight.

It is clear from the foregoing that Staffy testified at great length about the events of December 11 and 12, 1991, and was available to testify and to be cross-examined. While he was unable to recall some specific facts, that did not amount to a lack of memory of the subject matter. We decline to extend the scope of unavailability to include situations, as in this case, where a witness testifies, but, because he is unable to recall a few specific facts regarding an event that occurred almost three years prior, is found unavailable. Our search of Connecticut case law has failed to reveal a case that has extended the scope of unavailability to that extent. The effect of expanding the scope of unavailability to include such situations would almost eviscerate the requirement of necessity in determining whether a hearsay statement is admissible. Such a result is undesirable and would likely lead to the admission of unreliable statements.

Here, the trial court improperly found that Staffy was unavailable and, thus, abused its discretion. Because Staffy was not unavailable, the trial court improperly admitted the hearsay statement into evidence as a declaration against penal interest.[5]

## II

The defendant next claims that the trial court improperly permitted the jury to make a preliminary factual determination in determining the validity of an adoptive

---

[5] The defendant also claims that the admission of Staffy's statement violated her state and federal constitutional rights to confrontation. Because we dispose of this claim on evidentiary grounds, we need not address this claim on state or federal constitutional grounds. See *State* v. *Bryant*, supra, 202 Conn. 692 n.15; *State* v. *Gold*, 180 Conn. 619, 639–40, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980).

admission by silence.[6] The defendant neither filed a request to charge nor noted an exception to the instructions she now challenges and, therefore, this claim is unpreserved. The defendant requests, however, *Golding* review; *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989);[7] arguing that this claim implicates her due process rights to an adequately instructed jury. Since the record is adequate for review and the claim advanced implicates a fundamental constitutional right,

[6] The trial court charged the jury as follows: "Now, there is also something in the law which is identified as adoptive admissions of a defendant. That is, statements made within the accused's hearing which are relevant and material and to which she makes no reply may be given in evidence as indicative of conduct on her part and circumstances show that she heard, understood and comprehended the statement and the facts are known to her and she had an opportunity to speak and the circumstances naturally called for a reply from her. In this case you heard the testimony of Mr. Gary Meier as to a statement made by Stephen Staffy in the presence of the defendant implicating her shortly after the—in the statement made—shortly after the beating and stabbing. Now, such an accusation ordinarily calls for a response and consequently the ensuing silence under circumstances where the defendant should have protested her innocence could be construed as an admission of guilt. The statement that the state is relying on is alleged to have been made, according to Mr. Meier's testimony when Stephen Staffy in the presence of the defendant stated in effect, and I'm not quoting it exactly, but stated in effect that her old man started some shit and I or we killed him. If you believe that Staffy said we killed him then it would have been an accusation against the defendant which would ordinarily call for a protesting response. If you believe that Staffy said I killed him then, of course, no response would be ordinarily expected or if you believe that the evidence is insufficient for you to make such a determination either way then the state would have failed to establish that the statement implicated the defendant and you could not treat her silence as an adoptive admission."

[7] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992); see

the defendant has satisfied the first two prongs of *Golding*, and is entitled to a review of her unpreserved claim.[8]

A challenge to a jury instruction requires a review to determine whether it is reasonably possible that a jury was misled; *State* v. *Ortiz*, 217 Conn. 648, 667, 588 A.2d 127 (1991); and the instruction is to be read as a whole to judge its total effect rather than its individual parts. *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995). "While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Panella*, 43 Conn. App. 76, 80, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996). We further note that it is "well established that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law. *Henderson* v. *Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)." *State* v. *Preyer*, 198 Conn. 190, 198, 502 A.2d 858 (1985).

In Meier's December 15, 1991 statement to the police, he stated that Staffy, in response to Meier's inquiry about what happened, said, "Her old man started some shit and *I* killed him. Or *we* killed him." At trial, Meier testified that after Meier arrived home from work on December 12, 1991, Staffy said, "Her old man started some shit and I killed him." On cross-examination Meier testified that he did not think that Staffy said "We killed him." On redirect examination Meier was asked, after reviewing his sworn police statement of December 15, 1991, whether reviewing the statement helped him

_____

also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

[8] The defendant also requested review under the plain error doctrine. See Practice Book § 4061.

recall what Staffy had said, and Meier responded, "I don't believe so." The trial court charged the jury that it should make the preliminary determination as to what was said and thereafter, based on that determination, should consider the statement as an adoptive admission by silence on the part of the defendant.

The defendant's contention that the trial court improperly delegated the preliminary determination of what Staffy said to the jury implicates the constitutional right of the defendant to an adequately instructed jury. The trial court, rather than the jury, should have determined whether Staffy said "I killed him" or "We killed him." Although issues of fact are usually for the jury, in some instances, preliminary questions of fact are properly decided by the court. *State* v. *Estrada*, 26 Conn. App. 641, 651, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992). "Where hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was 'adopted' by the defendant . . . the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are unequivocal, positive, and definite in nature, clearly showing that in fact defendant intended to adopt the hearsay statements as his own. . . . *State Village of New Hope* v. *Duplessie*, 304 Minn. 417, 425, 231 N.W.2d 548 (1975). *State* v. *Morrill*, 197 Conn. 507, 537, 498 A.2d 76 (1985)." (Internal quotation marks omitted.) *State* v. *Moye*, 199 Conn. 389, 393, 507 A.2d 1001 (1986).

Our Supreme Court has developed standards to govern the admissibility of evidence of a defendant's prearrest silence in the face of accusation. "[T]he trial judge must decide, as a preliminary matter, whether proffered evidence of a defendant's silence in the face of accusation is, under the circumstances, sufficiently probative of assent by the defendant to the accusatory statement made in his presence. See *Mei* v. *Alterman Transport*

*Lines, Inc.*, 159 Conn. 307, 315, 268 A.2d 639 (1970); *Obermeier* v. *Nielsen*, [158 Conn. 8, 11, 255 A.2d 819 (1969)]. The inference of assent may be made only when no other explanation is equally consistent with silence. *State* v. *Vitale*, 197 Conn. 396, 405, 497 A.2d 956 (1985); *State* v. *Harris*, 182 Conn. 220, 229, 438 A.2d 38 (1980)." *State* v. *Estrada*, supra, 26 Conn. App. 651–52.

In this case, the determination of what Staffy said was a preliminary question of fact and, thus, a factual predicate to be decided by the trial court. Before the trial court could make a determination that the asserted adoptive admission was manifested by conduct or statements that were unequivocal and definite in nature, it first had to determine what Staffy said. The instruction was improper as a matter of law and, therefore, a violation of the defendant's due process right to an adequately instructed jury.

Although the evidence before the trial court, including Staffy's two statements, was sufficient to sustain the verdict on the manslaughter in the first degree count, we find that the admission of the two statements was improper. As a result of our resolution of the defendant's first two claims, and to be consistent with *State* v. *Gray*, 200 Conn. 523, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), we refrain from reviewing the defendant's remaining claims.

In *Gray*, our Supreme Court, adopting the reasoning of the Missouri Supreme Court in *State* v. *Wood*, 596 S.W.2d 394, 398–99 (Mo.), cert. denied, 449 U.S. 876, 101 S. Ct. 221, 66 L. Ed. 2d 98 (1980), stated: "When the trial court erroneously admits evidence resulting in reversal . . . the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency. The prosecution in proving its case is entitled to rely upon the rulings

of the court and proceed accordingly. If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. The practical consequences of this would adversely affect the administration of justice, if for no other reason, by the time which would be required for preparation and trial of every case. This is consistent with *Burks* v. *United States*, [437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)], which lists among examples of trial error which do not invoke the Double Jeopardy Clause with regard to retrial, the incorrect receipt or rejection of evidence." (Internal quotation marks omitted.) *State* v. *Gray*, supra, 200 Conn. 538–39. "Double jeopardy does not automatically bar retrial [even] where an insufficiency of evidence results from material being held on appellate review to have been erroneously admitted at trial." (Internal quotation marks omitted.) Id., 539, quoting *State* v. *Van Isler*, 283 S.E.2d 836, 838–39 (W. Va. 1981).

Because we cannot say unequivocally that the state will be unable to meet its burden of proof without the two statements we have found to be inadmissible, we do not exclude a retrial. See *State* v. *Gray*, supra, 200 Conn. 540.

The judgment is reversed as to the conviction of manslaughter in the first degree and the case is remanded for further proceedings on that count.

In this opinion the other judges concurred.