STATE OF CONNECTICUT *v.* THOMAS ROGERS
(AC 17616)

O'Connell, C. J., and Lavery and Dupont, Js.

Argued May 26—officially released September 22, 1998

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Judith Rossi*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio N. Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-8 and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, attempt to commit murder in violation of General Statutes §§ 53a-8, 53a-49 (a) (2) and 53a-54a, criminal possession of a firearm in violation of General Statutes (Rev. to 1993) § 53a-217 and illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.

On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction of criminal possession of a firearm, (2) there was insufficient evidence to support his conviction of illegal possession of a weapon in a motor vehicle, (3) he was denied his constitutional rights to a fair trial and due process of law, and his right not to testify due to improper remarks made by the prosecutor during his closing argument,

(4) he was denied his right to due process of law when the trial court's instructions to the jury on adoptive admissions improperly delegated to the jury a factual predicate that was for the court's determination and (5) the trial court improperly instructed the jury regarding the correlation between the intent required for the count of murder and the intent for the count of attempted murder. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 20, 1994, at approximately 2:30 p.m., Monique Little, Crystal Gora and Antonio West were congregated on the porch of a house at 69 County Street in New Haven. The three teenagers were talking with William Brockenberry and Kevin Gallman, who were standing near the porch. A silver-gray Mercury station wagon drove down County Street and stopped near number 69, with the passenger side of the vehicle closest to the house. Several of the occupants of the vehicle were wearing masks, hoods and black clothing. Numerous shots were fired from the vehicle toward the group at 69 County Street. Both Little and Gora testified that the front seat passenger displayed a gun, and West testified that he saw "fire" coming from the passenger seat area. None of the youths at 69 County Street could identify any of the occupants of the vehicle.

After the shooting stopped, Little, Gora and West found Brockenberry lying in the backyard, fatally wounded, bleeding from his mouth and side. Gallman's arm had been grazed by a bullet as he ran from the gunfire. In addition to Little, Gora, West, Brockenberry and Gallman, the incident was witnessed by National Guard member Cheryl Pilgrim, who was looking out a second story window in the Goffe Street Armory located across the street from 69 County Street. Pilgrim told the police that she saw the station wagon pull up, she saw several people in the vehicle, although she could

not see their faces, and that she observed shots coming from what she believed to be the passenger side of the vehicle. Pilgrim further told police that after the initial round of shots stopped, she saw the passenger in the right backseat get out of the vehicle and look around the scene. She stated that he was wearing camouflage clothing and had dreadlocks. After the passenger got back into the vehicle, Pilgrim heard several more shots fired and the vehicle then drove off.

The police recovered various items of ballistics evidence from the scene, including fourteen shell casings and bullet fragments. The ten identifiable shell casings were all .45 caliber and had been fired from two different .45 caliber firearms. The subsequent police investigation into the shooting uncovered the following additional evidence.

On November 19, 1994, the day before the shooting, three men, including Brockenberry's friend, Dana Kelly, and the defendant's brother, Anthony Rogers, had been injured in a shooting on Whalley Avenue in New Haven.[1] Also on November 19, 1994, Isaac Council, a good friend of the defendant, was with his girlfriend, Safira McLeod, and he told her that the defendant's brother had been shot. On November 20, 1994, Council and Larry McCowen picked up McLeod in a rented Mercury Sable. Early in the afternoon of November 20, 1994, Council, who was driving, took a gun from under the driver's seat of the car and placed it on his lap. Council then drove down Whalley Avenue and turned onto County Street where he drove slowly past a house with several people

---

[1] At trial, the defendant's brother, Anthony Rogers, testified that although he had been shot on November 19, 1994, the defendant was not angry nor was he seeking retribution against the person who had shot him because the defendant had been reassured that his brother was going to be fine and that the individual who had shot him was more seriously injured in the shoot-out.

in front. Council stated to McCowen, "There goes those guys. There goes those guys."

Council then drove the rented car to Ashmun Street, approximately one minute's drive from County Street, to the apartment of the defendant's girlfriend, Dana Edwards. Council parked the car on Ashmun Street, and he and McCowen conferred with the defendant in Edwards' living room while McLeod and Edwards sat in the adjacent kitchen. The conversation between the three men in the living room involved "the guys on County Street."

Shortly thereafter, the three men[2] left Edwards' apartment through the front door. Council was wearing a black coat with a hood, McCowen was wearing a camouflage army coat and the defendant was wearing a black coat with a hood. Council had a gun with him. Approximately ten minutes later, the three men returned to Edwards' apartment, entering through the back door at a fast pace. The men went directly into the living room where they talked and laughed about a shooting where someone was hit. Both Council and the defendant had guns with them at that time, both of which were black and had barrels less than twelve inches in length.

Council then gave the key to the rented car to McLeod, and directed McLeod and Edwards to take the car to the car wash to have it cleaned and vacuumed. McLeod and Edwards took the car to Four Brothers Car Wash in West Haven. While vacuuming the interior of the car, Edwards found a shell casing on the passenger side and showed it to McLeod before vacuuming it.[3]

---

[2] Council and McCowen are the alleged coconspirators of the defendant in the crime of conspiracy to commit murder.

[3] After McLeod gave her statement to the police on November 27, 1994, the police searched the trash at Four Brothers Car Wash, but were unable to locate the shell casing.

After leaving the car wash, McLeod and Edwards returned to the apartment where they eventually had a discussion with Council and the defendant in which McLeod learned that someone had died in the shooting. Council had formulated an alibi for himself whereby McLeod agreed to say that he was with her the entire day. Later that day, Council received a telephone call from the defendant at McLeod's apartment during which they discussed the fact that the police were looking for three to four black males with masks and for a particular type of car in connection with the County Street shooting.

I

The defendant first challenges the sufficiency of the evidence to support his conviction for criminal possession of a firearm.[4] Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt that (1) he possessed a firearm "near the area of 69 County Street" on November 20, 1994, at 2:30 p.m. as was charged in the information,[5] (2) the firearm was

---

[4] General Statutes (Rev. to 1993) § 53a-217 provides: "Criminal possession of a firearm or electronic defense weapon: Class D felony. (a) A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony, a class A felony [with one exception], a class B felony [with listed exceptions], a class C felony [with listed exceptions], or a class D felony [under the listed statutory sections]. For purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction.

"(b) Criminal possession of a firearm or electronic defense weapon is a class D felony for which two years of the sentence imposed may not be suspended or reduced by the court."

[5] The defendant was charged in the fourth count of the information with criminal possession of a firearm as follows: "The Assistant State's Attorney further accuses Thomas Rogers of Criminal Possession of a firearm and charges that at the City of New Haven, on or about the 20th day of November 1994, at approximately 2:30 p.m. near the area of 69 County Street, the said Thomas Rogers did possess a firearm, having been previously convicted of a class D Felony, said conduct being in violation of § 53a-217 of the Connecticut General Statutes."

operable and (3) the firearm had a barrel less than twelve inches in length. The defendant acknowledges that his trial counsel did not move for a judgment of acquittal of this crime at the end of the state's case or at the close of all of the evidence, and he therefore seeks review of this claim pursuant to the principles of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *Golding* review is warranted since "[un]preserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993)." *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993)." (Internal quotation marks omitted.) *State* v. *Laws*, supra, 37 Conn. App. 281. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." *State* v. *Sivri*, 231 Conn. 115, 646 A.2d 169 (1994). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." Id., 134.

A

First the defendant claims that the state failed to prove, as alleged in the information, that he possessed a firearm "near the area of 69 County Street." The testimony in the case revealed that the defendant was in possession of a gun in an apartment on Ashmun Street, several blocks away from County Street, just after the shooting. The evidence also revealed that the defendant was with Council and McCowen in an apartment just prior to the shooting on County Street, that the three men had discussed the people gathered on County Street just prior to leaving the apartment together, and that the men were gone only ten minutes when they returned together, talking and laughing about the shooting. The evidence further revealed that the defendant and Council wore black hooded jackets on the day of the incident, and McCowen wore a hooded camouflage jacket. Eyewitnesses to the shooting saw more than two people in the vehicle, two of whom sat in the front and wore black hooded jackets, and a third who sat in the rear seat and wore a camouflage jacket. The evidence also revealed that Council was the individual who rented the Mercury, who had the key to the car when it was given to McLeod to be taken to the car wash and who had been driving the car earlier in the day.

The jury reasonably could infer from this evidence that the defendant left the Ashmun Street apartment with Council and McCowen, and rode with them to County Street, that Council was the driver of the car during the shooting, that McCowen was the rear passenger and, by process of elimination, that the defendant was the individual in the front passenger seat who was observed firing shots from a gun, and that the three returned shortly after the shooting to the Ashmun Street apartment talking and laughing about the shooting. In the process of reviewing the sufficiency of the evidence, "it does not diminish the probative force of the evidence

that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). Accordingly, we conclude that the jury reasonably could have determined from the evidence presented that the defendant was guilty beyond a reasonable doubt.

## B

The defendant also claims that even if the state sufficiently proved that he possessed a firearm, it failed to prove both that the firearm was operable and that the barrel on the firearm possessed by the defendant was less than twelve inches in length. One of the necessary elements that the state must prove for a conviction for criminal possession of a firearm is that the firearm that the defendant is alleged to have possessed is operable. *State* v. *Bradley*, 39 Conn. App. 82, 90, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). "The operability of a pistol or firearm can be proved by either direct or circumstantial evidence." *State* v. *Hopes*, 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). Since the jury reasonably could have determined that the defendant was the individual in the rented Mercury who fired shots from the front passenger seat, the element of operability of the gun was satisfied.

The defendant claims that there was insufficient evidence regarding the length of the barrel of his firearm. McLeod testified, however, that she saw the defendant holding a gun at the Ashmun Street apartment shortly after the shooting, and that the gun had a barrel length of less than twelve inches. The jury reasonably could have credited this undisputed testimony. See *State* v. *Crosby*, 36 Conn. App. 805, 820–21, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995) (state not required to produce direct numerical evidence of length

of gun barrel to support conviction under § 53a-217); see *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994).

## II

The defendant next challenges the sufficiency of the evidence for the charge of illegal possession of a weapon in a motor vehicle in violation of § 29-38.[6] Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt that (1) he was in the rented Mercury at the time of the shooting, (2) he possessed a gun in the vehicle or knew that anyone else in the vehicle had a gun and (3) the gun that he possessed subsequent to the shooting, which McLeod testified was less than twelve inches in length, was the same gun that he possessed in the vehicle. Since the defendant did not file a motion for judgment of acquittal on this issue, we review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

As set forth in part I of this opinion, in view of the evidence and the reasonable inferences drawn therefrom, the jury reasonably could have concluded that the defendant was the individual firing a gun from the passenger side of the rented Mercury. The defendant claims, however, that the state failed to connect the gun that he possessed shortly after the shooting at the Ashmun Street apartment with the gun used to fire shots on County Street.

---

[6] General Statutes § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section means any pistol or revolver . . . ."

General Statutes § 29-27 defines "pistol" and "revolver" as used in § 29-38 as "any firearm having a barrel less than twelve inches in length."

The defendant concedes that he was at the Ashmun Street apartment with Council and McCowen shortly before the shooting. Further, the testimony reflected that the defendant was gone from the Ashmun Street apartment with Council and McCowen for only ten minutes before returning to the apartment where he was observed talking and laughing about the shooting, and in possession of a gun with a barrel less than twelve inches in length. The time frame of the incidents reasonably supports the inference that the gun that the defendant had in his possession when he entered the Ashmun Street apartment less than ten minutes after the shooting was the gun that the defendant had with him in the vehicle during the shooting. We conclude that the evidence was sufficient to convict the defendant of a violation of § 29-38.

## III

The defendant next claims that he was denied his constitutional rights to a fair trial, due process of law and his right not to testify due to improper remarks made by the prosecutor during his closing argument to the jury. The defendant did not object to any of the prosecutor's remarks at trial, nor did he file a motion for a mistrial and, accordingly, seeks review of this unpreserved claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. In the alternative, the defendant seeks to invoke this court's supervisory authority over the administration of justice to order a new trial. See *State* v. *Fullwood*, 194 Conn. 573, 584, 484 A.2d 435 (1984); *State* v. *Pouncey*, 40 Conn. App. 624, 639–40, 673 A.2d 547 (1996) (*Spear, J.*, dissenting), aff'd, 241 Conn. 802, 699 A.2d 901 (1997).

"We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly

egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 231 Conn. 246. "In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . *State* v. *Haggood*, 36 Conn. App. 753, 772, 653 A.2d 216 [cert. denied, 233 Conn. 904, 657 A.2d 644] (1995), quoting *State* v. *Williams*, supra, [246]." *State* v. *Hansen*, 39 Conn. App. 384, 395, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

The defendant claims that during the prosecutor's rebuttal remarks, the prosecutor made several improper personal attacks on the defendant,[7] appealed to the emotions of the jurors,[8] commented on the defendant's failure to testify[9] and made misstatements of

[7] This claim relates to the prosecutor's single reference to the defendant as a "killer." The prosecutor stated: "The defense talks about the importance of this case to [the defendant]. Let's talk about what else is important in this case. What's also important is that a killer, [the defendant], be brought to justice. That's also a responsibility [of] jurors. A sixteen year old man, William Brockenberry, is dead and he's not coming back. So, when we talk about what's important and what's not, let's not forget about Mr. Brockenberry."

[8] This claim relates to the prosecutor's reference to this case as involving "street violence," and his statement: "I'm going to leave you with this thought. You've listened to this case, you've seen street violence now in all its viciousness, all its ugliness, all its irrationality. Before you came here, maybe some of you thought that the police were the people who enforced the law; maybe some of you thought the state's attorney's office enforces the law; maybe some of you think maybe the judge enforces the law. But really, who enforces the law is you. The jury enforces the law."

[9] In this claim, the defendant argues that the prosecutor's comment on a conversation of the defendant, Council and McCowen was an indirect com-

the law regarding the presumption of innocence.[10] Our review of the entire transcript of the trial and the arguments of counsel, however, leads us to conclude that the defendant has not proved the existence of a pattern of misconduct such that the fairness of the entire trial was compromised. The acts of claimed misconduct consist, at most, of isolated instances that occurred in the course of legitimate rebuttal arguments and do not disclose a pattern repeated throughout the trial or conduct that is blatantly egregious. See *State* v. *Tweedy*, 219 Conn. 489, 509, 594 A.2d 906 (1991). The defendant cannot prevail because he was not deprived of a fair trial. Given the lack of deliberate prosecutorial misconduct or otherwise egregious or unduly offensive behavior, we also decline to exercise our supervisory powers over the administration of justice to order a new trial. See *State* v. *Pouncey*, 241 Conn. 802, 808–809, 699 A.2d 901 (1997) (court has supervisory power to order new trial to deter prosecutorial misconduct that is "unduly offensive to the maintenance of a sound judicial process"); *State* v. *Sherman*, 38 Conn. App. 371, 384, 662

---

ment on the defendant's failure to testify. In reply to the defendant's argument that McLeod said that she could not hear all of that conversation, the prosecutor stated: "The defense says, well, Miss McLeod couldn't say she heard it all, and I covered that, I think, already, but think about this. I don't know about you, but if I was not involved in a murder or if I was the innocent passenger in a car or if I had gone out for a cup of coffee, you'd be sure that I'd be screaming bloody murder about it to Mr. Council and Mr. McCowen, my friends, loud enough for all to hear at 152 Ashmun Street and at Miss McLeod's house. Which, by the way, I didn't hear discussed at all during the defense argument, that little alibi discussion that occurred at Miss McLeod's apartment after the fact. The defendant apparently wants you to believe that he whispered his objections in disapproval to his friends, apparently. I don't know."

[10] This claim relates to the prosecutor's comments on the defendant's right to the presumption of innocence. In response to the defendant's closing, which emphasized the presumption of innocence and the state's heavy burden in overcoming the presumption, the prosecutor stated: "No question [the defendant] is entitled to the presumption of innocence. That's the law, and what that means is that he's entitled to a fair trial, nothing more, nothing less. [The defendant] has now had his fair trial, he's had his due process, he is not entitled to any preferential treatment."

A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995) (same).

## IV

The defendant next claims that he was denied his right to due process of law because the trial court's instructions to the jury on "adoptive admissions" permitted the jury to make a preliminary factual determination regarding whether the evidence supported an adoptive admission by silence. The defendant claims that the preliminary factual determination should have been made by the court. The defendant concedes that he neither filed a request to charge nor excepted to the instruction that he now challenges and, therefore, he seeks review of his unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40.

We will review the defendant's claim, as the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his due process right to an adequately instructed jury. See *State* v. *Schiappa*, 44 Conn. App. 731, 739–40, 692 A.2d 820, cert. granted, 241 Conn. 908, 695 A.2d 541 (1997). We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial as to the convictions of murder, conspiracy to commit murder and attempt to commit murder.

"A challenge to a jury instruction requires a review to determine whether it is reasonably possible that a jury was misled; *State* v. *Ortiz*, 217 Conn. 648, 667, 588 A.2d 127 (1991); and the instruction is to be read as a whole to judge its total effect rather than its individual parts. *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995)." *State* v. *Schiappa*, supra, 44 Conn. App. 740.

The state presented evidence through McLeod that just after the shooting, the defendant, Council and

McCowen returned to the Ashmun Street apartment and had a conversation in the living room. McLeod testified that although she could not hear all of the specifics of the conversation from the kitchen where she was during the conversation, she did hear talk about a shooting, people running and someone being hit. The defendant and the others were laughing. She heard the defendant's voice but she testified that she could not tell which of the three men said any of the things of which she testified. She also testified that she did not hear the defendant denying participation or disputing what the other two men were saying.

The state filed a written request to charge on adoptive admissions based on this evidence. The defendant did not object.[11] The defendant did, however, object to the

[11] The trial court charged the jury with respect to adoptive admissions as follows: "Now, the state has offered evidence through the witness Safira McLeod that the defendant, Thomas Rogers, along with Isaac Council and Larry McCowen . . . engaged in certain conversations both prior to and subsequent to the crimes at issue. Miss McLeod testified that on both occasions prior to and subsequent to the crimes charged she heard all three individuals participate in the conversations, although she could not recall precisely the language used by each. She further indicated that at no time did she hear the defendant, or for that matter, anyone else, disavow or disagree with anything that was said or any of the conduct that she heard had occurred.

"Admissions may be introduced against a party who made the admission. A defendant can be held to have adopted a statement as his own, however, when his conduct indicates that he accedes to or adopts a statement made by another person even if a defendant makes no response to a statement made within his hearing. That statement may be introduced when the circumstances show that he heard and understood the statement, had the opportunity to speak and circumstances naturally called for a reply from him if the statement were not true. Such an admission by one cries out for denial by the other. In the absence of such a denial, it is admissible as an admission against both.

"Now, of course, in connection with that evidence the defendant points out that the witness testified that she did not hear everything that was said. *It is for you to determine whether, in fact, you believe such statements were made, were in fact made by the defendant, by Council or by McCowen, and whether or not the defendant's conduct or silence indicated an adoption of those statements.*" (Emphasis added.)

introduction of McLeod's testimony during the trial on the ground that it was hearsay. The state did not claim the testimony as an exception to the hearsay rule, namely, an adoptive admission. The trial court overruled the defendant's objection without giving any rationale for its ruling.

The defendant relies on *State* v. *Schiappa*, supra, 44 Conn. App. 740, in seeking a new trial. We held in *Schiappa* that the trial court improperly permitted the jury to make a preliminary factual determination of the content of a statement claimed as an adoptive admission of the defendant by the state, and improperly allowed the jury to make a similar determination as to whether the defendant acquiesced in the statement by silence or answer, which determinations should have been preliminarily decided by the trial court. Because the court's instructions to the jury were improper in this regard, we concluded that the defendant's due process right to an adequately instructed jury was violated and, therefore, ordered a new trial as to the defendant's conviction of manslaughter in the first degree. Id., 741–43.

The statement at issue in *Schiappa* required a preliminary factual determination of whether another participant said, in the defendant's presence, "I" (referring to himself only) or "we" (referring to both defendants) "killed the victim."[12] The witness to whom the statement was made testified at trial that the other defendant used the word "I," but in a prior statement the witness had said that he was not sure if the other defendant had said "I" or "we." Id., 740–41.

*Schiappa* is factually different from the present case because in this case there is no particular statement

---

[12] The *Schiappa* court does not discuss the fact that the defendant was charged with conspiracy to commit murder and the relevance of that fact to whether the word "I" or the word "we" was used. At the conclusion of

that is attributed to a particular defendant, there is no dispute as to the exact wording of any statement and because none of the statements testified to by McLeod implicates the defendant as the shooter of the murder victim, although the statements arguably place the defendant at the crime scene. Also, the statements do not implicate the defendant in a conspiracy to commit murder because none of the statements relates to an agreement to engage in conduct constituting a crime followed by an overt act in furtherance of the conspiracy. See *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). The *Schiappa* statement is directly related to the commission of the crime, manslaughter, of which the defendant in that case was found guilty, as opposed to the statements here, which do not relate to the commission of the crimes of murder, conspiracy to commit murder or attempt to commit murder. In this sense, the statements testified to by McLeod were not "accusatory in nature" in that they did not relate directly to an element of the murder related crimes with which the defendant was charged. See *State* v. *Estrada*, 26 Conn. App. 641, 652, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992) (court must first address question of whether "statement was sufficiently accusatory in import to call naturally for a response from the defendant"); *State* v. *Torrice*, 20 Conn. App. 75, 90, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989) (" 'rule in Connecticut is that when a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part' ").

Many cases discuss the admissibility of adoptive admission statements. To admit a statement into evidence as an adoptive admission, the defendant must

the trial, the jury did not find the defendant guilty of conspiracy to commit murder but of manslaughter in the first degree.

be aware of the statement, have had an opportunity to speak and, under circumstances that required a reply, remained silent or affirmatively acquiesced in the statement. See, e.g., *Batick* v. *Seymour*, 186 Conn. 632, 642, 443 A.2d 471 (1982); *Obermeier* v. *Nielsen*, 158 Conn. 8, 11, 255 A.2d 819 (1969); *State* v. *Lynch*, supra, 21 Conn. App. 394–95. Case law indicates that in terms of admissibility into *evidence*, the trial court must first determine what the statement was and if the defendant adopted it. See *State* v. *Moye*, 199 Conn. 389, 393, 507 A.2d 1001 (1986); *State* v. *Lawson*, 23 Conn. App. 358, 363, 580 A.2d 87 (1990); *State* v. *Lynch*, supra, 391.

Only a handful of cases discuss the consequences of an erroneous jury instruction that it should decide the preliminary questions that our decisions hold are for the court first to decide. The reason for placing this burden on the trial court initially is that the threshold determination involves a question of law. See *State* v. *Savage*, 34 Conn. App. 166, 171, 640 A.2d 637, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994); *State* v. *Lynch*, supra, 21 Conn. App. 398; *State* v. *Luca*, 19 Conn. App. 668, 672, 563 A.2d 752 (1989). A jury cannot be responsible for making a factual determination that was for the court to make as a matter of law. *State* v. *Luca*, supra, 672.

If we had to review only a trial court's ruling that McLeod's testimony was properly admissible into evidence as containing adoptive admissions of the defendant, based on case law our conclusion would clearly be that the court's ruling was correct. Here, the evidence established that the defendant did not disagree with the statements made, the defendant heard the statements and the statements were made in the presence of the defendant and the other men. The evidence was very similar to that in *State* v. *John*, 210 Conn. 652, 680, 557 A.2d 93, cert. denied, 493 U.S. 829, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), and *State* v. *Reddick*, 36 Conn.

App. 774, 785, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995), and was properly admitted into evidence. We must, however, determine more than the question of admissibility into evidence. We must decide whether there was instructional error, given our conclusion that the statements were properly admitted into evidence as adoptive admissions.

There are instances in our case law other than adoptive admissions that also require preliminary factual determinations to be made by a trial court rather than a jury, and such cases provide useful analogies. In *State* v. *Luca*, supra, 19 Conn. App. 669–70, it was conceded by the state that the trial court, not the jury, should have decided preliminarily whether the defendant had introduced substantial evidence to show that the defendant was drug-dependent in a prosecution for the sale of cocaine by a person who was not drug-dependent. Because the jury instructions improperly required the jury to answer that question, the defendant was awarded a new trial as to the charges of sale of cocaine by a person who was not drug-dependent. General Statutes § 21a-278 (b). *State* v. *Luca*, supra, 674. *Luca* also held that if an instructional error has no impact on a conviction because the question the jury was improperly asked to decide did not relate to an element of a crime of which the defendant was convicted, any error would have no effect on the outcome of that conviction and, therefore, that conviction must be upheld. Thus, in *Luca*, the defendant's conviction of possession with intent to sell cocaine under General Statutes § 21a-277 (a) was upheld because any question improperly considered by the jury as to drug dependency was irrelevant to that charge.

Although *Luca* is analogous to the present case in that a preliminary question for the court was given to the jury to decide, it is not determinative of the present

case as to the impropriety of the instruction because in *Luca* the trial court had never made any prior ruling during the trial relating to the defendant's drug dependency, nor had the trial court had any prior occasion to consider the question. In the present case, the trial court had an occasion to consider the admissibility of the statement as an adoptive admission.

The case of *State* v. *Lynch*, supra, 21 Conn. App. 386, is more like the present case. In *Lynch*, the defendant claimed that the trial court should have made a preliminary ruling that the state had established a prima facie case of conspiracy rather than instruct the jury that it should determine this question, and instructed it that if the jury found that a prima facie case was established, to consider the statement in question. We held that it was plain error to allow the jury to consider the preliminary question.

*Lynch* concerned a conviction for conspiracy to commit larceny by extortion. During the trial, the court admitted into evidence an out-of-court statement made by a codefendant in the hearing and presence of the defendant, without first having made an independent preliminary determination as to whether the state had proven a prima facie case of conspiracy and allowed the jury to make that determination when it instructed the jury. The statement was that the only way a certain transaction could get through the town planning and zoning commission of Enfield is to cobroke the commission with the defendant and that the defendant would take care of the codefendant. The defendant, in response, said that he would expect nothing if the deal did not go through. At the close of the state's case, the defendant moved for a judgment of acquittal, claiming that without the statement, the state had not proved a prima facie case of conspiracy. The court denied the motion.

After holding that the submission to the jury of the preliminary question was plain error, we reviewed the evidence to determine if the trial court, had it considered the question, could have found by a fair preponderance of the evidence that a conspiracy existed, without consideration of the statement. We concluded that the court could not have found the conspiracy to have existed by a fair preponderance of the evidence without the statement. We then went on to determine whether, if the trial court had considered the inculpatory statement as a putative adoptive admission, it would have abused its discretion in failing to admit the statement into evidence as an adoptive admission. The statement to which the defendant had responded in an inculpatory manner had been admitted into evidence over the defendant's objection, but no claim was made by the state that it was an adoptive admission. As is true in this case, the objection was a general one and the court did not rule on the testimony's admissibility as an adoptive admission. We held that as a matter of law, the trial court would have had to admit the statement as an adoptive admission. Id., 393. To reach that conclusion, this court undertook a review to consider the question the court should have preliminarily determined before submitting it to the jury. We concluded that the court would have to have found, by a fair preponderance of the evidence, that the statement was made and adopted by the defendant. Since this was so, the question given to the jury pursuant to the court's instruction was proper because, as a matter of law, the court could not have made any other preliminary determination. *Lynch* relied on *State* v. *Vessichio*, 197 Conn. 644, 654, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986), for our appellate authority to review the evidence to determine what the trial court would have had to conclude, as a matter of law, had the preliminary questions been ruled on by the trial court.

We determine that had the trial court in this case considered whether the statements testified to by McLeod were made, and whether, under the circumstances, they were adopted by the defendant, it would have been an abuse of discretion, given the decision in *State* v. *John*, supra, 210 Conn. 680, to answer the preliminary questions other than affirmatively and to refuse to admit them into evidence. On the basis of the teachings of *Lynch* and under the facts of this case, we conclude that the instructions to the jury were not improper.

We further conclude that *Schiappa* does not apply. Even if the instructions were improper, we would not conclude that the defendant was deprived of due process because the statements had no direct effect on the murder related crimes for which the defendant was convicted. See *State* v. *Luca*, supra, 19 Conn. App. 673.

The defendant cannot prevail on his unpreserved claim because he has failed to show that the alleged violation of his due process rights clearly exists and clearly deprived him of a fair trial as to his conviction of murder, conspiracy to commit murder and attempt to commit murder.

V

The defendant finally claims that the trial court improperly instructed the jury regarding the correlation between the intent required for the count of murder and the intent required for the count of attempt to commit murder by failing to inform the jurors that they could find the defendant guilty on one count and not guilty on the other.[13] He claims that the improper

---

[13] In its instructions to the jury regarding the relationship between the intent to kill for the count of murder and the requisite intent for the count of attempt to commit murder, the trial court stated: "Now, with respect to the murder charge, just the murder charge, not the lesser includeds, and the attempt to commit conspiracy—attempt to commit murder charge, the

instruction was tantamount to a directed verdict of guilty on both charges if the jury found the requisite intent. The defendant failed to preserve this claim at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. Since the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his due process right to an adequately instructed jury, we will review this claim. See *State* v. *Washington*, 15 Conn. App. 704, 711, 546 A.2d 911 (1988) (claim that judge improperly instructed jury on element of offense reviewable even if not raised at trial). We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

"In reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction." *State* v. *Barnes*, 33 Conn. App. 603, 607, 637 A.2d 398 (1994), aff'd, 232 Conn. 740, 657 A.2d 611

---

killing of Mr. Brockenberry and the wounding of Mr. Gallman occurred essentially at the same time, the same place.

"Now, in order for you to find this defendant guilty of the charge of murder, one of the elements is that you must find proven beyond a reasonable doubt that the defendant had the intent that another person be killed. And if you—so, if you should find the defendant not guilty of the crime of murder because you find that intent to kill has not been proven, then you must also find the defendant not guilty on the charge of attempted murder as well because there would also be no intent to attempt to kill and no intent to kill on the attempt charge. So, the intent, if you find him not guilty on murder, because you find the state has not proven intent to kill, then you must also find him not guilty of attempted murder because the same intent would apply to both of those charges. Keep in mind, I am not talking about any of the lesser includeds on the first count, I'm only talking about the murder charge and the attempt to commit murder charge. If you find that the state has proven beyond a reasonable doubt each of the elements of the crime of attempted murder, then you should find him guilty. If, on the other hand, if you find that the state has failed to prove him—if you find the state has failed to prove beyond a reasonable doubt any one of those elements, then you should find the defendant not guilty on the third count."

(1995). Our review of the jury charge in its entirety indicates that the trial court did not invite the jury to consider the two separate charges as one, nor did the charge direct a verdict of guilty on both counts.

The defendant claims that the jury could have interpreted the trial court's instruction to mean that if they found that the defendant possessed the requisite intent to kill, they could not return a verdict of not guilty on one of the charges of either murder or attempt to commit murder. We disagree that this would be a reasonable conclusion.

Prior to the challenged instruction, the trial court cautioned the jury to consider separately each of the five counts charged against the defendant, stating: "[T]he information has five separate counts, five sections, we call those counts, each contains a complete statement of the crime with which this accused is charged. These constitute allegations of separate claims joined together for the convenience of trial in one information. *It will be your duty to consider each charge separately* and when you return to the courtroom you'll be asked whether or not the accused is guilty as charged on each of the counts . . . ." (Emphasis added.) The trial court's charge with respect to the intent requirement merely informed the jury that if it found that the defendant did not possess the intent to kill, then the intent requirement would not be met for either of the two counts of murder or attempted murder. The trial court does not indicate that a finding of intent alone is enough to convict the defendant on either count. In fact, the charge included the caution that "if you find that the state has failed to prove . . . beyond a reasonable doubt *any one of those elements*, then you should find the defendant not guilty . . . ." (Emphasis added.) From this charge, the jury could not reasonably have concluded that it was not permitted to find that the defendant was guilty of one crime but not guilty of the

other. There is nothing in the instruction to indicate that the two crimes should not be considered independently. Therefore, the defendant has failed to demonstrate that a constitutional violation clearly exists as required by *Golding* for unpreserved claims.

The judgment is affirmed.

In this opinion the other judges concurred.